UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elma J. Augustine,

              Plaintiff,

v.

United States of America, et al.,

              Defendants.

Court File No. 13-cv-1417 (DWF/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge upon the United States'[1] Motion to Dismiss, [Docket No. 5], and Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 25].[2] This case has been referred to the undersigned Magistrate Judge

---

[1] At the motion hearing, counsel for the United States requested that the Court substitute the United States as the sole Defendant in the present action. In addition to the United States, Plaintiff names Eric Holder, B. Todd Jones, and the Internal Revenue Service as Defendants. Plaintiff did not object to the substitution. Because Plaintiff does not assert any individual capacity claims and because the substitution would not materially alter Plaintiff's requested relief since official capacity claims are actions against the United States, the Court substitutes the United States as the sole named Defendant in the present action:

> Lawsuits against an agency of the United States or against an officer of the United States in his or her official capacity are considered an action against the United States. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (suits against public officials acting in their official capacities should be treated as suits against the public entity). "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989).

Montagne v. Wallin, No. 10-cv-4515 (JNE/LIB), 2011 WL 846850, at *2 (D. Minn. Feb. 11, 2011), report and recommendation adopted, No. 10-cv-4515 (JNE LIB), 2011 WL 845824 (D. Minn. Mar. 7, 2011).

[2] Additionally, one day after the Court heard oral argument regarding Docket Numbers 5 and 25, Plaintiff filed a Motion for Leave to File Plaintiff's Reply to Defendants' Opposition to Augustine's Motion for Leave to Amend Complaint, [Docket No. 33]. Moving parties are not traditionally afforded the opportunity to submit reply memoranda for the Court's consideration of non-dispositive motions. District of Minnesota Local Rule 7.1(b)(3). However, in light of the Court's duty to construe pro se submissions liberally, and for the sake of undertaking a full and complete review of Plaintiff's arguments and submissions in support of her Motion for Leave to Amend Complaint, the Court **GRANTS** Plaintiff's Motion for Leave to File Plaintiff's Reply to Defendants' Opposition to Augustine's Motion for Leave to Amend Complaint, [Docket No. 33], and considers all of her submissions in disposing of the present motions.

pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (Order of Referral [Docket No. 11]). The Court held a motion hearing on December 11, 2013, at which both parties appeared telephonically, and the Court took the parties' motions under advisement. For reasons discussed below, the Court orders that Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 25], be **GRANTED**. Subsequently and with reference to Plaintiff's now Amended Complaint, the Court recommends that the United States' Motion to Dismiss, [Docket No. 5], be **GRANTED** with prejudice.

## I.      STATEMENT OF FACTS

Plaintiff's original Complaint, brought pursuant to 26 U.S.C. § 7433,[3] alleges illegal tax collection actions by the United States regarding tax years 1998 through 2006. (Compl. [Docket No. 1], § I ¶ 2). Plaintiff's original Complaint arises from the United States' allegedly illegal levying and garnishing of Plaintiff's assets. (Id. § II). Plaintiff alleges that on or about June 14, 2011, the United States began levying monies from Plaintiff's accounts. (Id. § II ¶¶ 1, 11). Plaintiff summarily describes the collection as "illegal" and alleges that the United States' levying has caused her "immense financial hardship." (Id. § II ¶ 2).

Specifically, in support of her allegation that the United States' collections were illegal, Plaintiff alleges that she did not receive notices of deficiency for tax years 2004 through 2006, leaving Plaintiff with "no warning and no chance to defend herself" against the 2004 through 2006 assessments. (Id. § II ¶ 10). In addition to approximately $63,308 in damages, Plaintiff requests a TRO against the IRS to remove the allegedly illegal liens and "halt the illegal levies." (Id. § I ¶ 2, § V ¶ 9).

---

[3] 26 U.S.C. § 7433 provides: (a) In general. – If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

Not contained in Plaintiff's original Complaint is mention of an underlying tax assessment judgment the United States obtained against Plaintiff in 2012. Plaintiff's assessed income tax liabilities were reduced to judgment in this District; Plaintiff owes the United States $567,264.01 in past-due income taxes. See United States v. Augustine, et al., No. 11-cv-1488-RRE, 2012 WL 6838910 (D. Minn. Nov. 28, 2012), aff'd, 13-1198, 2013 WL 5183935 (8th Cir. Sept. 17, 2013) (herein after "Augustine I"). The Court held:

> Judgment in favor of the United States and against Elma J Augustine for unpaid income taxes for 1998, 1999, 2000, 2001, 2002, 2003 2004, 2005 and 2006 in the amount of $567,264.01 plus interest and other statutory additions accruing after May 30, 2012 as provided by law shall be entered. The court further orders that the property located at 3769 Estate Court N.E. in Bemidji, Minnesota with the following legal description shall be sold and the proceeds applied to partially satisfy the federal tax obligations of the Augustines. The legal description is: Lot 9, Block 2, Riverview Estates, according to the plat thereof, and situate in Beltrami County, Minnesota.

Augustine I, 2012 WL 6838910, at *2.

The record presently before the Court indicates that Plaintiff has not paid nor made arrangements to pay the above liabilities. Instead, in response to the United States' levying, Plaintiff filed an administrative claim for unauthorized collection with the IRS and, contemporaneously, filed the present suit.

Since entry of judgment in Augustine I, IRS Revenue Officer John T. Miller has been assigned to collect Plaintiff's unpaid federal tax liabilities. (Miller Decl. [Docket No. 8], ¶¶ 1, 3). Officer Miller has taken several steps to collect Plaintiff's unpaid taxes, including issuing demands for payment, filing notices of federal tax lien, and issuing other collection notices and levies. (Id. ¶ 6). Officer Miller, by sworn affidavit, states that all means of attempting to collect Plaintiff's liabilities have been in accordance with the Internal Revenue Code. (Id.)

## II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT, [DOCKET NO. 25]

Plaintiff moves the Court for leave to file an Amended Complaint. (Pl.'s Mot. for Leave to Amend [Docket No. 25]). By her proposed Amended Complaint, Plaintiff seeks (1) a judgment against Defendants for unlawful takings of monies, (2) a judgment "abating unlawful continuous 'levies' against Royalty payments Mrs. Augustine receives," and (3) a judgment ordering Defendants to return the illegally taken amounts. (Proposed Amended Compl. [Docket No. 25-1], at 1).

The Court construes Plaintiff's proposed Amended Complaint as simply alleging additional factual allegations in support of her original claim of illegal tax collection actions by the United States pursuant to § 7433.[4] Plaintiff does not allege any new or additional claims. In her proposed Amended Complaint, Plaintiff realleges and incorporates the allegations contained in her original Complaint. (Id. at 2).

Plaintiff's proposed Amended Complaint largely incorporates additional arguments regarding the alleged invalidity of the 1998 through 2003 notices of deficiency. In line with her original Complaint, Plaintiff does not deny the existence of notices of deficiency for the years 1998 through 2003 (on the contrary, she attaches them as exhibits to her opposition memorandum). Rather, she argues that the notices are defective and invalid on their face. Plaintiff ultimately challenges the legitimacy of the notices, claiming that they are signed with "faux" signatures of individuals without the proper authority to issue such notices of deficiency. (Id. § B). Plaintiff provides no evidence for this contention, but merely states, "it is still clear that

---

[4] The Court notes that Plaintiff failed to comply with Local Rule 15.1(b)(2), which requires that any motion to amend a pleading must be accompanied by "a version of the proposed amended pleading that shows – through redlining, underlining, strikeouts, or other similarly effective typographic methods – how the proposed amended pleading differs from the operative pleading." However, the Court is aware of its duty to construe pro se submissions liberally and considers Plaintiff's Motion to Amend in its entirety.

he had no delegation of authority to make any Notices of Deficiency at the times in question."

(Id.)

### A. Standard of Review

When a party does not seek to amend her pleadings within the timing scope of Fed. R.

Civ. P. 15(a)(1), she may amend "only with the opposing party's written consent or the court's

leave." Fed. R. civ. P. 15(a)(2). When a party moves to amend its pleading, Fed. R. Civ. P. 15

instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a)(2). The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits. In the absence of such
> an apparent or declared reason – such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice
> to the opposing party by virtue of allowance of the amendment,
> futility of the amendment, etc. – the leave sought should, as the
> rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Although "parties do not have an absolute right to

amend their pleadings, even under this liberal standard," Sherman v. Winco Fireworks, Inc., 532

F.3d 709, 715 (8th Cir. 2008), the Court begins its review "with a presumption of liberality."

DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998).

A party may successfully challenge a motion to amend pleadings on grounds of futility if

the claims created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for

failure to state a claim upon which relief can be granted. See Cornelia I. Crowell GST Trust v.

Possis Medical, Inc., 519 F.3d 778, 782 (8th Cir. 2008); Humphreys v. Roche Biomedical Lab.,

Inc., 990 F.2d 1078, 1082 (8th Cir. 1993). To survive a Rule 12(b)(6) motion to dismiss, a

complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts must undertake the "context-specific task" of determining whether the moving party's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See Ashcroft v. Iqbal, 556 U.S. 662, 679-81 (2009). The moving party must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

However, in applying the motion to dismiss standard in ruling on a motion to amend under a Rule 15(a)(2) futility analysis, courts generally do not weigh the substance of the proposed amended pleadings to the same extent as would be appropriate on a Rule 12(b)(6) motion. Streambend Properties III, LLC v. Sexton Lofts, LLC, No. 10-cv-4745 (MJD/SER), 2014 WL 316895, at *6 (D. Minn. Jan. 28, 2014) (citing Birchwood Labs., Inc. v. Battenfeld Techs., Inc., 762 F. Supp. 2d 1152, 1156 (D. Minn. 2011) (MJD/JJK)). Furthermore, the Court is ever mindful of its duty to construe pro se pleadings and submissions liberally. Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996).

> **B.     In accordance with Rule 15, the Court freely allows leave to amend prior to consideration of the United States' Motion to Dismiss.**

Eighth Circuit case law provides that courts should consider motions to amend prior to ruling on motions to dismiss. In Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.2d 952 (8th Cir. 2002), the defendant moved to dismiss the plaintiff's complaint for failure to state a claim upon which relief may be granted. Id. at 955. While the motion to dismiss was pending, the plaintiff filed a motion to amend its pleading and add additional parties. Id. The district court

granted the defendant's motion to dismiss and denied as moot the plaintiff's motion to amend.

Id. On appeal, the Eighth Circuit reversed, writing:

> [T]he district court ignored Pure Country's motion to amend, granted Sigma Chi's motion to dismiss the original complaint, and then denied Pure Country's motion to amend the complaint as moot. That approach, as a procedural matter, was plainly erroneous. If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint. We therefore reverse the district court's denial of Pure Country's motion to amend the complaint, and we remand the matter to the district court with instructions to reconsider the motion under the discretionary standard asserted by Pure Country. In order to permit the district court to reconsider the motion to amend the complaint, we also vacate the district court's dismissal of the original complaint; however, we do so subject to the possibility that the claims in question may again be dismissed by the district court following its ruling on the motion to amend.

Id. at 956 (internal citations omitted); Murrin v. Fischer, No. 07-cv-1295 (PJS/RLE), 2008 WL 540857 (D. Minn. Feb. 25, 2008).

In Reinholdson v. Minnesota, No. 01-cv-1650 (RHK/JMM), 2001 WL 34660104 (D. Minn. Oct. 26, 2001), the defendants filed a motion to dismiss the plaintiff's complaint. The plaintiff responded by filing a First Amended Complaint. The district court referred the motion to dismiss to the Magistrate Judge and directed the court to, at the same time, consider the plaintiff's First Amended Complaint (in accordance with Pure Country). The court determined that it would allow the plaintiff to consider whether he desired to amend the complaint further, in light of the issues raised in the motion to dismiss. From there, the Court instructed the parties that the motion to dismiss, if still appropriate, would be directed at the final amended complaint. Accordingly, it is procedurally proper in the case now before the Undersigned to allow amendments prior to consideration of the motion to dismiss.

Importantly, Plaintiff's present Motion for Leave to Amend does not suffer from undue delay. C.f., Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co., 100 F. App'x 717, 720 (10th Cir. 2004) (holding that the district court "acted prudently" when it refused to consider a motion to amend not submitted until after the court had ruled on a motion to dismiss). Platte Valley's motion for leave to amend suffered from undue delay because Platte Valley first addressed its desire to amend its pleadings before the district court at the end of its arguments opposing defendant's motion to dismiss. This argument occurred two and a half months after Platte Valley filed its complaint and almost two months after Imperial submitted its motion to dismiss. In the present case, Plaintiff did not wait until completion of arguments on the motions to dismiss to move to amend her Complaint. Rather, Plaintiff filed her motion in response to the motions to dismiss, prior to her own opposition memorandum and prior to the United States' reply memorandum.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to Amend, [Docket No. 25], and considers Plaintiff's now Amended Complaint in its analysis of the United States' Motion to Dismiss, [Docket No. 5].

## III.    THE UNITED STATES' MOTION TO DISMISS, [DOCKET NO. 5]

The United States moves the Court, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6), for an order dismissing Plaintiff's (now Amended) Complaint in its entirety. (Def.'s Mot. to Dismiss [Docket No. 5], at 1). Specifically, the United States argues (1) that the Anti-Injunction Act bars Plaintiff's request for injunctive relief, (2) that Plaintiff's claims are barred by lack of subject matter jurisdiction for failure to exhaust administrative remedies, (3) that Plaintiff fails to state a claim upon which relief may be granted, and (4) that the U.S. Attorney, Attorney General, and IRS should be dismissed from the suit for insufficiency of service (mooted by footnote 1, supra).

### A.    Standard of Review

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may at any time challenge the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge, courts may consider matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn, 918 F.2d at 729-30, n.6.

As already mentioned, the Court is aware of its duty to construe pro se pleadings liberally; however, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

### B.    Analysis

### 1.    The Court does not have subject matter jurisdiction over the present suit as Plaintiff has failed to exhaust her administrative remedies

Sovereign immunity shields the United States from federal lawsuits. Carlson v. I.R.S., No. 12-cv-01367 (JNE/JJK), 2012 WL 6861353, at *2 (D. Minn. Dec. 4, 2012), report and recommendation adopted, No. 12-cv-1367 (JNE/JJK), 2013 WL 160124 (D. Minn. Jan. 15, 2013), aff'd, 13-1790, 2013 WL 6283913 (8th Cir. Dec. 5, 2013) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006) ("Federal courts generally lack jurisdiction to

hear claims against the United States because of sovereign immunity.")). In certain circumstances, the United States may waive its sovereign immunity, but waiver must be clear and unequivocal. United States v. Mitchell, 445 U.S. 535, 538 (1980). Courts narrowly construe waiver in favor of the United States. United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

"Congress has provided a limited waiver of sovereign immunity where, in connection with the collection of a federal tax, an officer or employee of the IRS recklessly, intentionally, or negligently disregards a provision of the Internal Revenue Code." Carlson, 2012 WL 6861353, at *3 (citing 26 U.S.C. § 7433(a)). The waiver provided by § 7433 applies only where the taxpayer bringing a suit for wrongful collection of taxes has first exhausted his or her administrative remedies provided by the IRS. 26 U.S.C. § 7433(d)(1); see Holt v. Davidson, 441 F. Supp. 2d 92, 96 (D.D.C. 2006) (noting that failure to exhaust administrative remedies available through the IRS acts as a limitation on the waiver of sovereign immunity).

As discussed above, Plaintiff brings the present action pursuant to 26 U.S.C. § 7433, which provides in part: "Requirement that administrative remedies be exhausted. – A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1); In re Swensen, 438 B.R. 195, 198 (Bankr. N.D. Iowa 2010) ("Section 7433(d)(1) requires that no judgment for damages shall be awarded unless the plaintiff has exhausted administrative remedies.").

To exhaust administrative remedies under § 7433, and thereby trigger the limited waiver of the United States' sovereign immunity, plaintiffs must file an administrative claim for damages with the IRS as required by Treasury Regulation § 301.7433-1:

> **(d) No civil action in federal district court prior to filing an administrative claim –** (1) Except as provided in paragraph (d)(2)

of this section, <u>no action</u> under paragraph (a) of this section <u>shall</u> <u>be maintained in any federal district court before the earlier of the</u> <u>following dates</u>:
**(i)** The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or
**(ii)** The date six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.

26 C.F.R. § 301.7433-1 (emphasis added).

In her original Complaint, incorporated by reference in her now Amended Complaint, Plaintiff alleges that she has "sent out her 'ADMINISTRATIVE CLAIMS FOR UNAUTHORIZED COLLECTION ACTIONS UNDER I.R.S. § 7433 AND 26 C.F.R. 301.7433-1." (Compl. [Docket No. 1], § IV ¶ 2). Plaintiff further contends that she has fully complied with the applicable administrative requirements in her now Amended Complaint. (Proposed Amended Compl. [Docket No. 25-1], ¶¶ 31-32). Plaintiff's administrative claim letter is dated June 12, 2013, only one day prior to the date Plaintiff filed the present suit with this Court. (Pl.'s Ex. 10 [Docket No. 25-3]) (submitted with Motion for Leave to Amend Complaint).[5]

Plaintiff brought the present suit in federal court on June 13, 2013. The commencement of the present suit predates both the date a decision was rendered on Plaintiff's administrative claim, as well as the date six months after the date Plaintiff initially filed her administrative claim. Plaintiff, therefore, failed to exhaust her administrative remedies under § 7433 <u>prior to</u> <u>filing</u> the present suit. A plaintiff cannot cure a jurisdictional defect by exhausting administrative remedies <u>after filing her complaint</u>. <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) (affirming the dismissal of a complaint when plaintiff exhausted administrative remedies after

---

[5] In its briefing, the United States represents to the Court that in August 2013, the IRS denied Plaintiff's administrative claim for damages. Regardless, Plaintiff could not have exhausted her administrative remedies as of the time she filed her Complaint in federal court (filed June 13, 2013, one day after filing her administrative claim).

filing the complaint). As a result, the Court presently lacks subject matter jurisdiction over Plaintiff's claims, and the Court recommends dismissal on this basis.[6]

Additionally, the Anti–Injunction Act ("AIA") deprives Plaintiff of any grounds on which to seek injunctive relief in the present action against the United States. Plaintiffs are specifically precluded under the AIA from receiving injunctive relief including requests for the removal of liens and levies. The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). "The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 5 (1962). In addition, the AIA permits "the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue." Id. at 7. Since the language of the AIA "could scarcely be more explicit," the Court lacks jurisdiction to consider Plaintiff's attempt to prevent the IRS from collecting her taxes through liens or levies.[7] Bob Jones Univ. v. Simon, 416

---

[6] While a dismissal here could have been recommended to be without prejudice since exhaustion of administrative remedies is arguably a correctable defect, the Undersigned recommends that the dismissal be with prejudice because of the analysis in Section III.B.2, infra.

[7] However, the AIA does provide three limited exceptions to the general rule against judicial interference in the collection of taxes. First, a suit may be brought in the tax court for a redetermination of a deficiency pursuant to 26 U.S.C. § 6212(a) and § 6213(a). Second, a suit may be brought under § 6213(b)(1) to enjoin a wrongful levy. However, the second exception applies only to actions brought by non-taxpayers to enjoin a sale or levy where their interests are superior to those of the sovereign. 26 U.S .C. § 7426(b)(1). Finally, the Eleventh Circuit stated that an additional exception exists when a plaintiff demonstrates that "(1) under no circumstances could the government ultimately prevail on its tax claim and (2) equity jurisdiction otherwise exists; either ground being conclusive." Mathes v. United States, 901 F.2d 1031, 133 (11th Cir. 1990). Plaintiff does not qualify for any of these exceptions.

U.S. 725, 736 (1974). While the AIA includes a number of statutory exceptions, the Court does not find any exception applicable here.[8]

---

[8] Plaintiff does appear to claim that her alleged non-receipt of notices of deficiency for tax years 2004 through 2006 renders the AIA jurisdictional bar inapplicable in the present case. However, Plaintiff's non-receipt does not automatically excuse application of the AIA. In Pagonis v. United States, 575 F.3d 809 (8th Cir. 2009), a case originating in this District, a taxpayer brought action against the United States challenging assessment by the IRS of tax deficiencies and penalties. The District of Minnesota (affirmed by the 8th Circuit) dismissed the case for lack of subject matter jurisdiction, holding that the Anti-Injunction Act deprived the court of jurisdiction because Pagonis sought to restrain the assessment or collection of a tax. Id. at 812. In Pagonis, the IRS sent the taxpayer a notice of deficiency by certified mail to her last known address; the notice was ultimately returned to the IRS as "unclaimed." Id. at 811. According to the taxpayer, she was unaware of the assessment until she began receiving collection notices from the IRS. Id. Pagonis filed suit in district court, alleging that the IRS violated her rights to due process, seeking a permanent injunction against further assessment and a refund of any funds already collected. Id.

Pagonis succinctly and clearly summarizes the process of challenging assessments, thus revealing that in the present case, Plaintiff has not gone about it correctly:

> A taxpayer who has not paid an income tax assessment in full, however, generally **may not file suit in district court to challenge the validity of the assessment.** If the taxpayer pays part of the assessment and seeks to challenge it through a refund action under § 1346(a)(1), then the suit is barred by the Supreme Court's ruling in Flora that full payment of an assessment is a prerequisite to a refund action. **Alternatively, if the taxpayer challenges the assessment without paying any portion of it, the suit is typically barred by the Internal Revenue Code's Anti–Injunction Act**, 26 U.S.C. § 7421(a). Section 7421(a) prohibits any "suit for the purpose of restraining the assessment or collection of any tax" brought by "any person" in "any court," but includes a number of exceptions, two of which are relevant here. First, pursuant to § 6213(a), the jurisdictional bar does not apply if the IRS attempts to assess or collect the tax before mailing the notice of deficiency in compliance with § 6212. Second, a judicially created exception to the bar applies if the government has no chance of ultimately prevailing on its claim "under the most liberal view of the law and the facts" at the time of suit and "equity jurisdiction otherwise exists."

Id. at 812-13 (internal citations omitted) (emphasis added). Pagonis held that a notice of deficiency "sent by certified mailed to [the taxpayer's] last known address [is] sufficient under § 6212, and the exception to the Anti-Injunction Act in § 6213(a) does not apply." Id. at 813.

In the present case, the United States has produced evidence that the IRS did provide notices by certified mail to Plaintiff's last known address. (Olson Decl. [Docket No. 9], ¶¶ 4-5, Ex. 3 Notice of Deficiency, Ex. 4 Certified Mailing List), rendering the only vaguely applicable exception to the AIA inapplicable in the present case.

The Court may consider the Olson affidavit in arriving at its jurisdictional determinations. Although Rule 12(b)(6) motions to dismiss do not typically require discovery unless converted into a Rule 56 motion for summary judgment, this Circuit treats Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction differently, as Rule 12(b)(1) motions are "rooted in the unique nature of the jurisdictional question." Osborn, 918 F.2d at 729 (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). Rule 12(b)(1) motions present unique factual challenges:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to

Because Plaintiff has not brought her action within one of the § 7421(a) statutory exceptions to the Anti-Injunction Act, and because Plaintiff has not demonstrated that a judicially-created exception applies, the Court lacks subject matter jurisdiction over Plaintiff's requested injunctive relief.

### 2. Even if the Court had subject matter jurisdiction over the present case, Plaintiff's claims are ultimately barred by the doctrine of res judicata

Plaintiff's sole proffered basis for her present suit challenging the United States' tax obligation collection activities as "illegal" are her allegations as to the purported invalidity of the underlying notices of deficiency. By her now Amended Complaint, Plaintiff argues that no valid notices of deficiency ever existed for any of the tax years in question, namely, 1998 through 2006. (Pl.'s Opp. Mem. [Docket No. 16], at 2). However, Plaintiff is ultimately precluded from litigating this issue in the present case by the doctrine of res judicata.

"[T]he disposition of an earlier claim constitutes a res judicata bar against the litigation of subsequent claim where (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." Laase v. County of Isanti, 638 F.3d 853, 856 (8th Cir. 2011) (internal citations omitted). Res judicata applies with equal force to claims actually litigated and claims that may have been litigated in the earlier action. Id.

---

[8](continued)

> hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material acts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. at 730 (citing Mortenson v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). Unlike motions to dismiss pursuant to Rule 12(b)(6), Osborn explicitly holds that Rule 12(b)(1) motions "may be supported with affidavits or other documents." "Trial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Johnson v. U.S., 534 F.3d 958, 964 (8th Cir. 2008) (internal quotations omitted).

The rule of res judicata is a stringent one and applies in tax cases analogous to the present suit. In United States v. Martin, 395 F. Supp. 954 (S.D.N.Y. 1975), the district court granted summary judgment in favor of the United States regarding the foreclosure of liens derived from income tax assessments. The Martin taxpayer's defense to collection was lack of notice of deficiency. However, the court in Martin ultimately held that the taxpayer challenged the validity of the underlying assessments too late. Id. at 958.

As a general rule, a taxpayer is permitted to challenge the validity of the underlying assessments in the government's suit to foreclose the liens based upon the assessment (i.e. reduce assessments to judgment). See, e.g., United States v. Lease, 346 F.2d 696 (2d Cir. 1965); United States v. Mauro, 243 F. Supp. 413 (S.D.N.Y. 1965). Accordingly, the Martin court held that none of the taxpayer's validity arguments were available to him in his subsequent suit; they had all been laid to rest by the money judgment entered in the government's favor on August 12, 1971. "That judgment invokes the principle of res judicata as a prior judicial determination of the validity of the assessment." Martin, 395 F. Supp. at 958 (citing Moyer v. Mathas, 458 F.2d 431, 434 (5th Cir. 1972); Graham v. United States, 243 F.2d 919, 922 (9th Cir. 1957); United States v. Howard, 296 F. Supp. 264 (D. Or. 1968); Mauro, 243 F. Supp. 413 (dictum)).

As in Martin, supra, Augustine I in the present case constitutes a prior judicial determination that the assessments against Plaintiff are indeed valid. Augustine I, 2012 WL 6838910, concerned the same factual circumstances as the case at hand, namely, Plaintiff's tax liabilities for tax years 1998 through 2006 and the United States' collection efforts thereof; it involved the same parties; it was litigated to a final judgment on the merits (resulting in a money judgment for the United States against Plaintiff); and it allowed Plaintiff a full and fair opportunity to litigate and challenge the validity of the underlying assessments. Augustine I,

2012 WL 6838910. As a direct result, any challenge Plaintiff now attempts to raise in the present action concerning the underlying notices of deficiency or assessment determinations would be necessarily precluded from relitigation in the present action by res judicata. Plaintiff had a previous full and fair opportunity to challenge the validity of the underlying assessments – include the validity of the notices of deficiency – in Augustine I, when the United States brought suit to reduce the assessments to judgment. See, e.g., United States v. Langert, 902 F. Supp. 999, 1002 (D. Minn. 1995) (defendants raised legal challenges to the validity of the assessments in the United States' suit to reduce assessments to judgment); United States v. Bryant, 15 F.3d 756, 758 (8th Cir. 1994) ("The Tax Court ultimately entered a final decision determining the Bryants' tax liabilities for the tax years at issue. The doctrine of res judicata bars Mrs. Bryant from now relitigating claims and defenses that were raised or that could have been raised in the Tax Court."). The IRS's alleged failure to issue a notice of deficiency is a pre-assessment notice and is one defense a taxpayer may raise when defending a suit to reduce tax assessments to judgment. See United States v. Ahrens, 530 F.2d 781, 782, 785 (8th Cir. 1976).

The doctrine of res judicata provides the Court with an alternative means of recommending dismissal of Plaintiff's claims.[9]

## IV. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Leave to File Plaintiff's Reply to Defendants' Opposition to Augustine's Motion for Leave to Amend Complaint, [Docket No. 33], is **GRANTED**; and

---

[9] In light of the analysis in Section III.B.1 and III.B.2, supra, the Court need not reach the issue of whether Plaintiff's now Amended Complaint fails to sufficiently plead a claim upon which relief may be granted pursuant to Rule 12(b)(6).

   2.  Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 25], is **GRANTED**.

B.  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

   1.  The United States' Motion to Dismiss, [Docket No. 5], be **GRANTED with prejudice** as set forth above.

Dated: February 20, 2014

s/ Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 6, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 13, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.